# AFFIDAVIT

STATE OF ILLINOIS      )
                       ) ss:
COUNTY OF COOK         )

BEFORE ME, the undersigned authority, personally appeared, Chad Zawitz, M.D., personally known to me and who, after first being duly sworn upon oath, deposes and says as follows:

1. My name is Chad Zawitz, M.D.

2. I hold medical licensure for the State of Illinois. I currently practice Internal Medicine and Infectious Disease in the jail system in Illinois. I am the Senior Physician/Clinical Coordinator of HIV and Infectious Disease Services in the Cook County Jail System which is one of the largest jail systems in the United States.

3. I have carefully reviewed the pertinent medical records and documents with reference to the involvement of Valdez v. Armor, Chan, MD, et al. These include: Complaint; Armor Medical Records; State of Florida Prison Medical Records; Valdez Deposition.

4. I am a medical expert as defined by Florida Statutes § 766.202(6).

5. I have never had any previous opinion disqualified in any court of law.

6. As I understand the factual evidence from the above records review, Mr. Valdez was incarcerated in the MCDC Correctional Facility on or around October 16, 2015. He was returned to the Florida Department of Corrections on or around April 18, 2016 (the Complaint incorrectly states 2015).

7. Mr. Valdez had pre-existing conditions including hypertension and a history of eye surgery in 2012, and loss of visual acuity in his right eye. He did not have any known history of seizure disorder.

8. Mr. Valdez was evaluated multiple times by medical providers for management and control of his hypertension throughout his time at MCDC.

9. On December 28, 2015, Mr. Valdez fell from his bunk and hit his head on the floor at approximately 3:00a.m. The cause of the fall is unknown. Mr.

Valdez testified in his deposition he was asleep when the fall occurred, and has no recall of how it happened.

10. Mr. Valdez was immediately brought by correctional staff for a medical evaluation. He was noted to be walking with a "steady gait." He was noted to be "alert and oriented X 3" and "states his head is not hurting." His physical examination revealed relatively normal vital signs (slightly elevated blood pressure), and a contusion to the right side of his head with "two small open areas no longer bleeding." The superficial wounds were cleaned and a dressing was applied. He was deemed clear to return to his living unit. He was also placed on the sick call list for a medical provider follow-up evaluation.

11. Based on the initial assessment immediately after the fall, it is my opinion that a more urgent medical evaluation by an MD or midlevel provider was not indicated or necessary. The initial assessment and care were reasonable and appropriate. Sutures were clearly not indicated or necessary.

12. On December 29, 2015, Mr. Valdez was seen by Dr. Chan. He complained of "bleeding." Physical examination revealed no bleeding from his superficial head wound. There was also no swelling or redness. His neurologic examination was completely normal.

13. Based on his clinical presentation and examination findings on December 29, 2015, Mr. Valdez did not have any evidence of or complaints consistent with blunt head trauma that warranted anything more than conservative management and superficial wound care. There were no signs of a concussion, altered mental status, headache, or any neurologic deficits of any kind.

14. Mr. Valdez was re-evaluated by Dr. Chan on January 12, 2016. At this encounter, Mr. Valdez complained he was "still bleeding" (despite no evidence of any significant bleeding, even just 20 minutes immediately after the fall on December 28, 2015). Again, Dr. Chan noted no bleeding. Mr. Valdez also reported "occasional" pain/soreness over the left parietal scalp, as well as decreased range of motion of his right shoulder and neck (neither of which were complaints at either of the two medical evaluations just following the fall).

15. Mr. Valdez' physical examination revealed completely normal range of motion of his neck. His right shoulder revealed "slight decreased active range of motion." His neurologic examination was again completely normal. Again, Dr. Chan determined "there is no evidence of brain injury."

He was prescribed pain medication, and x-rays of his right shoulder and neck were ordered. Based on my medical training, education, and experience, I agree with Dr. Chan's assessment and plan. No brain imaging, neurology referral, or other management for blunt head trauma was necessary or indicated.

16. The x-rays of Mr. Valdez' neck and shoulder were completed on January 19, 2016. They were completely normal.

17. Mr. Valdez was evaluated by Dr. Chan on January 22, 2016. He continued to report "brain injury" despite no medical symptoms or complaints of any kind suggestive of or consistent with blunt head trauma or brain injury/concussion. His physical examination again revealed a completely normal neurologic examination, normal range of motion of his neck, and slightly decreased active range of motion of his right shoulder.

18. Mr. Valdez was evaluated by Dr. Chan on January 26, 2016. At this encounter he again had no complaints of any kind suggestive of blunt head trauma with associated brain injury. His only complaint was the same right shoulder pain. Nursing staff noted that he was non-compliant with his blood pressure medication.

19. Mr. Valdez was evaluated by various medical providers no less than 7 times after that date, up until his return to FDOC in April 2016. At none of these visits did Mr. Valdez report or complain of any physical signs or symptoms suggestive of any ongoing concerns from his blunt head trauma in December 2015. None of the physical examinations conducted suggested any findings consistent with blunt head trauma or concussion.

20. Mr. Valdez also claims he reported "extreme" pain and twitching to his right eye, at or around the date of his transfer to MCDC. He claims his concerns were ignored, and that due to budgetary concerns, he was informed to follow up with his eye doctor after his release. Review of the initial medical evaluations on October 12, 2015 indicated no complaints of eye pain or twitching. His eye examination was unremarkable excepting for known chronic visual acuity problems in his right eye.

21. Mr. Valdez was seen by Dr. Chan on October 13, 2015 for "poor vision out of right eye ever since the right eye surgery by Dr. Maurer in 2012." Again there was no complaint of eye pain or twitching. Mr. Valdez claims after this surgery, due to claims of lack of follow up, his visual acuity declined (prior to coming into care with Armor or Dr. Chan). Objective review of the medical records shows he was seen by Dr. Maurer no less than 4 times immediately following his eye surgery in 2012.

22. Dr. Chan and other Armor medical providers examined Mr. Valdez' eyes

on numerous occasions throughout his time at MCDC. At none of these visits did Mr. Valdez ever complain of eye pain or twitching. His only concern was ongoing known, chronic/stable visual acuity decline in his right eye. In my opinion, no urgent or immediate follow up with an eye surgeon was necessary or indicated during his time at MCDC.

23. Based upon my review of the above records, as well as my education, training, and experience, it is my opinion within a reasonable degree of medical probability that Mr. Valdez sustained at most a minor scalp laceration that did not require sutures on December 28, 2015. He did not experience a concussion or any other traumatic brain injury. No brain imaging, neurology specialty consultation, or other management beyond conservative clinical follow up was necessary or indicated. Despite his claims to the contrary, the medical documentation supports a timely, reasonable and appropriate medical evaluation within minutes of the fall, as well as a day later by Dr. Chan. There is no evidence of a concussion or neck injury, including no evidence of any decreased range of motion of his neck. There was no evidence of any delay in care following the fall.

24. Based upon my review of the above records, as well as my education, training, and experience, it is my opinion within a reasonable degree of medical probability that Mr. Valdez did not have any headaches/migraines, memory loss, or confusion caused by the fall on December 28, 2015. At no time throughout the MCDC incarceration did Mr. Valdez ever make such complaints.

25. Based upon my review of the above records, as well as my education, training, and experience, it is my opinion within a reasonable degree of medical probability that Mr. Valdez did not have any ocular/vision complaints or concerns during his time at MCDC that warranted any referral to an ophthalmologist/eye surgeon. The care and management provided by Dr. Chan was timely, reasonable, and appropriate.

FURTHER AFFIANT SAYETH NOT.

_____
Chad Zawitz, M.D.

SWORN TO AND SUBSCRIBED BEFORE ME this 11th day of July, 2017.

_____
Notary Public

My Commission expires:



LINDA M KAMPE
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
May 10, 2020