```
                                      UNITED STATES DISTRICT COURT
                                      SOUTHERN DISTRICT OF FLORIDA

                                      CASE NO.16-10080-CIV-MOORE
                                      MAGISTRATE JUDGE P.A. WHITE
CHRISTOPHER VALDEZ,

      Plaintiff,

v.                                    REPORT OF
                                      MAGISTRATE JUDGE
ARMOR CORRECTIONAL, INC. et al,       ON DEFENDANT DR CHEN'S
                                      MOTION FOR SUMMARY JUDGMENT
      Defendant.
_____/
```

## I. Introduction

Christopher Valdez filed a pro se civil rights action pursuant to 42 U.S.C. §1983, claiming that the defendant, Dr. Chen, was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights for failing to examine and treat his head injury. Plaintiff is seeking a declaratory judgment along with unspecified compensatory and punitive damages. The plaintiff is proceeding *in forma pauperis*.

The Cause is now before the Court upon the defendant Dr. Chen's Motion for Summary Judgment with supporting documentary exhibits, affidavits, transcripts of depositions and medical records. (DE# 40). The plaintiff was advised of his right to file a response to the motion. (DE# 46). The plaintiff has not filed a response. Both parties have filed pretrial statements. (DE# 74, 78).

## II. Summary of the Facts

Valdez was held in the Monroe County Jail pending an evidentiary hearing. At 3:00 a.m. on December 28, 2015, he fell from his bunk. He was in a top bunk and the fall to the ground was approximately five feet. He was awoken by an officer who placed him on the floor. The officer transported the plaintiff in a wheelchair to see medical personnel. The plaintiff was seen by a nurse who

examined him for injuries. The nurse advised the plaintiff that he may need couple of stitches, gave him Motrin and an ice pack. The nurse arranged for the plaintiff to see the doctor later that morning.

Later that morning when he awoke he was still bleeding. The nurse offered the plaintiff some pills and a band-aid. The plaintiff was seen by at 2:17 p.m. the next day. Dr. Chen looked at his wound and told the plaintiff it was healing.

On January 12, 2016 Dr. Chen saw the plaintiff regarding continued complaints of injuries from the fall. Dr. Chen ordered x-rays be taken of the plaintiff's neck and right shoulder, but found nothing abnormal in the x-rays. Based on the plaintiff's statements, Dr. Chen gave the plaintiff some exercises to do. The plaintiff was again seen by Dr. Chen on January 22, 2016. The plaintiff advised Dr. Chen that we would be released in the next month. Dr. Chen did not seek to have him referred to an outside doctor because it would take at least two months to get to see an outside doctor. Dr. Chen advised the plaintiff to see doctor once he was released.

The wound to the plaintiff's head has fully healed. When the movant was transferred back to the Department of Corrections he advised them of his alleged lack of range of motion of his neck and shoulder. Medical personnel have prescribed Motrin for pain but have not recommended any further tests or treatment.

The plaintiff filed grievances regarding his medical care, however, he never appealed the denial of his grievances.

III. Exhaustion

Dr. Chen seeks to be dismissed as a defendant on the ground that the plaintiff did not exhaust his administrative remedies prior to filing his complaint. In relevant part, Section 1997e provides, as follows:

> ...No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

Exhaustion of all available administrative remedies is a mandatory pre-condition to suit. Booth v. Churner, 532 U.S. 731, 739 (2001); see also Porter v. Nussle, 534 U.S. 516, 524-25 (2002) ("Beyond doubt, Congress enacted §1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").[1]

---

[1] The Eleventh Circuit has articulated the following policy reasons for favoring the exhaustion requirement:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

Alexander v. Hawk, 159 F.3d 1321, 1327 (11 Cir.1998).

The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, supra, 534 U.S. at 524. Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. Booth, supra, 532 U.S. at 734. The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. See Booth, supra at 741 n. 6 ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"); Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11 Cir.1998)("Congress has now mandated exhaustion in section 1997e(a) and there is no longer discretion to waive the exhaustion requirement...Since exhaustion is now a pre-condition to suit, the courts cannot simply waive those requirements where the determine they are futile or inadequate."). Moreover, the PLRA requires "proper exhaustion," so that the agency has an opportunity to address the issues on the merits. Woodford v. Ngo, 548 U.S. 81, 87-88 (2006); see also Woodford, supra, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.").

The Supreme Court further explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [prior to seeking relief from a federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings... Construing §1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once

administrative remedies are no longer available] would turn that provision into a largely useless appendage." Woodford, supra, at 89. This interpretation of the PLRA's exhaustion requirement "carries a sanction" for noncompliance and avoids "mak[ing] the PLRA exhaustion scheme wholly ineffective." Id. at 91. Consequently, a prisoner cannot "proceed...to federal court" after bypassing available administrative remedies, either by failing to properly exhaust administrative remedies or waiting until such remedies are no longer available, as allowing federal review under these circumstances would impose "no significant sanction" on the prisoner and "the PLRA did not create such a toothless scheme." Id.

A court must dismiss an action if satisfied that the plaintiff failed to properly exhaust his available administrative remedies prior to filing suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11 Cir.2000); Alexander, supra, 159 F.3d at 1325-26.

In an instance where an inmate did not timely pursue a grievance or grievance appeal, they cannot then simply bypass the administrative grievance procedure, and proceed to federal district court and seek relief on their underlying claims without having sought to file a grievance, or grievance appeal, out-of-time. See Harper v. Jenkin, 179 F.3d 1311, 1312 (11 Cir.1999) (rejecting plaintiff's argument that his administrative remedies should be deemed exhausted since his grievance was denied as untimely and any appeal therefrom would necessarily be denied; and affirming dismissal of civil rights suit for failure to satisfy mandatory exhaustion requirements, and in doing so holding that the appellant could not be considered to have exhausted his administrative remedies where he had not sought leave to file an out-of-time grievance, since to find otherwise would allow an appellant to

simply ignore the PLRA's exhaustion requirement and still gain access to federal court merely by filing an untimely grievance).

Further, in instances where an inmate/plaintiff contends that there existed some impediment to their filing of a grievance, or grievance appeal, Courts have held that when such an impediment to exhaustion is removed, an inmate's failure to properly utilize administrative remedies thereafter cannot be justified. See Hilton v. Sec'y for Dep't of Corr., No. 03-13492, 170 Fed. Appx. 600, 605, 2005 WL 3802979, at **5 (11 Cir., Nov. 1, 2005)(in case where a state prisoner alleged that he could not exhaust administrative remedies because he was denied grievance forms while in "administrative confinement," the Eleventh Circuit explained that "Hilton's contention...[did] not entitle him to relief because he fail[ed] to allege that he was unable to obtain these forms once he was released from confinement"); Mason v. Smith, No. CV304-19, 2007 WL 2386411, at *6-7 (S.D.Ga., Aug. 17, 2007) (in case where plaintiff contended he was in lock-down following a use of force incident and contended that he therefore was unable to file a grievance within the five (5) day time period required by the SOP, the court found that even if, assuming *argu*endo, the plaintiff was prevented from pursuing administrative remedies within the initial five-day period, his failure to pursue an out-of-time grievance after he was released form confinement had access to the grievance process, required the Court to dismiss the instant suit under §1997e(a)).

Finally, it is noted that while pre-suit exhaustion of administrative remedies is mandatory, Jones v. Bock, 549 U.S. 199, 211 (2007), in limited circumstances an inmate's administrative remedies may be deemed to have been rendered "unavailable," but the Plaintiff "must point to specific facts showing that officials prohibited or blocked his use of the grievance process." Heard v.

6

Allen, No. 1:09-CV-119 (WLS), 2010 WL 3855235, at *4 (M.D.Ga., Aug. 12, 2010). Courts have found that such circumstances may include refusal of forms needed to pursue an institution's established grievance process; informing an inmate that a procedural step in the established administrative process need not or cannot be pursued; or threats of retaliation of a sufficient nature. See e.g. Miller v. Norris, 247 F.3d 736, 740 (8 Cir. 2001) (holding that inmate was prevented from exhausting his administrative remedies when prison officials failed to respond to his requests for grievance forms, and that the inmate's failure to exhaust those remedies was not a bar to suit because they were not "available" to him); Miller v. Tanner, 196 F.3d 1190, 1194 (11 Cir.1999) (inmate was not required to file an appeal after being told unequivocally, and in writing, that appeal was precluded; plaintiff produced memorandum denying grievance and informing plaintiff that no appeal was available); Mosier v. Fla. Dept. of Corr., No. 5:11-cv-399-MP-GRJ, 2012 WL 3239385, at *4 (N.D.Fla., June 19, 2012) (An administrative remedy may be deemed "unavailable for PLRA purposes if prison officials render pursuit of the remedy irrational through threats of substantial retaliation."); Cole v. Sec'y Dept. of Corr., No. 11-10691, 451 Fed.Appx. 827, 828, 2011 WL 6184433, at **1 (11 Cir., Dec. 14, 2011)(To demonstrate such unavailability as a result of threats, a prisoner must establish that: (1) the threat actually deterred him from lodging a grievance or pursuing a particular part of the administrative process; and (2) the threat is one that would so deter a reasonable inmate of ordinary firmness and fortitude) (citing Turner v. Burnside, 541 F.3d 1077, 1084-1085 (11 Cir. 2008)).

The grievance procedure for the Monroe County Detention Center is set forth in the inmate handbook. (DE# 74, p. 43-44). The inmate is required to first bring any request or grievance to the attention

of the Unit/Dorm Deputy. The object of this policy is to handle and resolve issues at the lowest possible level. There is no time limit to file a grievance. If the inmate does not receive a satisfactory response or resolution then the inmate may fill out an Inmate Request Form and hand it to the Unit/Dorm Deputy for further action. If the inmate wishes to appeal an answer to this request he must fill out a new Inmate Request Form to be sent to the employee's supervisor within 5 days of the response. The division supervisor or designee should respond within ten days. If the inmate is dissatisfied with the response of the division supervisor the inmate may file an appeal to the supervisor responsible for that division within five days of the receipt of the response. A response should be provided within ten days of receipt of the appeal.

In his complaint the plaintiff generally alleged that he had exhausted his administrative remedies with respect to all claims and all defendants. The plaintiff did not provide any specific allegations regarding the manner in which he exhausted his administrative remedies.

Dr. Chen has provided an affidavit from Deputy Larry Carey, Classifications Supervisor with the Monroe County Sheriff's Office. Deputy Carey has searched all available databases of appeals of grievances by the plaintiff and located no appeals filed by the plaintiff. The plaintiff, although advised to file a response to the motion, has failed to file any response or provide any proof of his efforts at exhaustion.

Upon review of the parties' filings, and construing the fact allegations in the light most favorable to the plaintiff, the following facts/allegations are taken as true. Plaintiff was in the custody of the Monroe County Detention Center. The center has a

policy in place for inmate grievances that provides a mechanism for informal resolution of the inmate's concerns, followed by a formal written grievance, to be followed by a written grievance appeal if the inmate does not find the ruling at the written grievance stage to be satisfactory. This policy requires the filing an informal grievance with the Unit/Dorm Deputy. The policy further provides for a method of appealing said grievances. The plaintiff did not appeal any informal grievance as it pertains to Dr. Chen. It is therefore undisputed that the plaintiff has failed to comply with the Monroe County Detention Center procedures required to exhaust his administrative remedies.

For the above stated reasons, it is apparent that, as to defendant Dr. Chen, the complaint by Christopher Valdez is subject to dismissal for lack of exhaustion of administrative remedies provided by the Monroe County Detention Center. Dr. Chen should be dismissed as a defendant.

### IV. Summary Judgment on Eighth Amendment Claim

Dr. Chen has also filed a motion for summary judgment, arguing that based on the undisputed facts the plaintiff cannot establish a Eighth Amendment violation. A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. See Celotex Corp., 477 U.S. at 323. That is, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no 'genuine issue for trial.'" See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(*quoting* First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

It is well accepted that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990). Accordingly, the nonmoving party, even if a *pro se* prisoner, cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial. Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11th Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)(*citing* Anderson v. Liberty Lobby, Inc., 477 U.S. at 252). Of course, in making the determination whether genuine issues of material fact are present, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most

10

favorable to the nonmoving party," see Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997), and "resolve all reasonable doubts about the facts in favor of the nonmovant." See United of Omaha Life Ins. v. Sun Life Ins. Co., 894 F.2d 1555, 1558 (11th Cir. 1990).

Valdez has been advised regarding the requirements under Fed.R.Civ.P. 56 for a proper response to the defendants' motion for summary judgment. As indicated, Valdez has failed to file any response.

The Eighth Amendment of the United States Constitution forbids "cruel and unusual punishments." U.S. Const. amend. VIII. In the prison context, "[t]he Eighth Amendment can give rise to claims challenging specific conditions of confinement, the excessive use of force, and the deliberate indifference to a prisoner's serious medical needs." Thomas v. Bryant, 614 F.3d 1288, 1303 (11th Cir. 2010)(citations omitted). See also Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). To establish an Eighth Amendment claim for deliberate indifference to medical needs, the plaintiff he must satisfy three components. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). First, the plaintiff must meet the objective component by showing that he had a serious medical need. Id. Second, he must satisfy the subjective component by showing that the defendants were deliberately indifferent to that need. Id. And, finally, he must show that his injury was caused by the defendants' wrongful conduct. Id. Not every claim of inadequate medical treatment rises to the level of a constitutional violation. Estelle, 429 U.S. at 105, 97 S.Ct. at 291. An incarcerated individual must establish "more than ordinary lack of due care" to succeed on an Eighth Amendment claim. Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).

"A medical need that is serious enough to satisfy the objective component 'is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Goebert, 510 F.3d at 1325, *quoting*, Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)(internal quotation marks omitted). To show that the defendant was deliberately indifferent to plaintiff's serious medical need, plaintiff has to prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Townsend v. Jefferson County, 601 F.3d 1152, 1158 (11th Cir. 2010)(alterations omitted)(*quoting* Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005)). See also Goebert, 510 F.3d at 1326-27. Stated differently, "[t]he plaintiff must show an 'objectively serious deprivation' of medical care by demonstrating (1) 'an objectively serious medical need ... that, if left unattended, poses a substantial risk of serious harm,' and (2) that the prison official's response 'to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.'" Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011), *quoting*, Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000).

Treatment violates the Eighth Amendment only if it involves "something more than a medical judgment call, an accident, or an inadvertent failure," Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[2] It must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to

---

[2] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981, and all Fifth Circuit Unit B decisions rendered after October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). See also Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2002). A "complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106, 97 S.Ct. at 292. The Eleventh Circuit has held that conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all. See e.g., Bingham, 654 F.3d at 1176. A doctor's decision about the type of medicine that should be prescribed is generally "a medical judgment" that is "an inappropriate basis for imposing liability under section 1983." Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995); see also Waldrop v. Evans, 871 F.2d at 1033 ("Mere medical malpractice, however, does not constitute deliberate indifference. Nor does a simple difference in medical opinion."). Of course, a complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Bingham, 654 F.3d at 1176, *citing*, Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994).

In his initial complaint Valdez alleged that he was not seen by Dr. Chen until 45 hours after he fell out his bunk. He alleged that he was in so much pain that he could not stand and was nauseated. He claimed that he told Dr. Chen that he was suffering migraine pain and could not move his neck or shoulder without "sharp razor-like pain." He further claimed that he could not move his neck or shoulder at all. Valdez alleged that Dr. Chan "did not conduct an examination of the Plaintiff."

Dr. Chan is seeking summary judgment on this claim, arguing that Valdez has failed to state a claim as a matter of law. Dr. Chan

13

argues that Valdez cannot establish that he had a serious medical need or that Dr. Chan acted with deliberate indifference. Dr. Chan further argues that Valdez's claim is nothing more than a disagreement over the nature of the medical care provided.

In support of her motion for summary judgment Dr. Chan has submitted Valdez's depositions testimony, records of three examinations conducted by Dr. Chan, and an affidavit of a medical doctor after review of the treatment provided by Dr. Chan. Valdez has not provided any response to Dr. Chan's motion for summary judgment.

According to Valdez's deposition testimony (DE# 50-2), he went to sleep on the top bunk on December 28, 2015 and woke at 3:00 a.m. as a deputy lowered his body to the floor. The deputy got a wheelchair and transported Valdez to medical where he was seen by a nurse. The nurse examined Valdez for injuries. She advised him that he might need a couple of stitches. Valdez was provided Motrin and an ice pack and advised that he would be seen by a doctor. The next morning Valdez's head was still bleeding. He was again seen by nurse who offered some pills and band-aids.

Valdez was seen by Dr. Chan the next afternoon, December 29. Dr. Chan looked at his head and said it was healing. Valdez claimed that he filed sick call requests everyday, but acknowledged that he did not know if Dr. Chan ever saw those requests. On January 12, 2016, Dr. Chan again saw Valdez and ordered x-rays of his neck and shoulder. The x-rays showed no traumatic injury to Valdez's neck or shoulder. Dr. Chan recommended Valdez do some exercises to address his complaints of neck pain. As acknowledged by Valdez, Dr. Chan saw something wrong with his neck but did not find it to be really serious. Dr. Chan asked Valdez when he would be getting out of jail.

He told her he might get out that month. Dr. Chan then advised him that it would not make sense to refer him to an outside doctor because it could take a month or two to get him on list to see an outside doctor. Valdez acknowledged that Dr. Chan had to get permission for additional testing by an outside doctor.

Valdez did not recall being seen again by Dr. Chan. However, medical call records indicate that he was seen again on January 22, 2016. Valdez has acknowledged that since his return to the custody of the Florida Department of Corrections no medical care provider recommended any diagnostic testing. He has been provided ibuprofen but no medical treatment.

The medical records submitted by Dr. Chan reflect that Valdez was seen on four occasions in relation to his fall from the bunk bed. (DE# 40-2). He was first seen on December 28, 2015 at 3:20 a.m. The movant was reported to be alert and oriented but complaining of pain in his head. He had two small open cuts that were no longer bleeding. The wounds were cleansed and dressed and he was returned to housing. He was placed on a list to be seen by the doctor.

The next day, December 29, 2015, Valdez was seen by Dr. Chan at 2:17 p.m. Valdez complained that he was still bleeding. Upon examination Valdez was alert and oriented. He was in no pain or distress. There was no soft tissue swelling.

Valdez was seen again on January 12, 2016. Valdez complained of occasional pain in the area where he was cut. He also complained of decreased range of motion of his right shoulder and a "cracking" sensation when he turned his neck. Upon examination Valdez's wounds were found to have healed over. Valdez was found to have slightly decreased range of motion in his right shoulder, but no bony or soft

15

tissued deformities. Dr. Chan found no evidence of any brain injury. She diagnosed Valdez as experiencing muscle spasms and prescribed NSAIDs and a short course of muscle relaxants. Dr. Chan also noted that she would obtain x-rays of his neck and shoulder.

The x-rays were taken on January 19, 2016. Valdez met with Dr. Chan on January 22, 2016. A physical exam revealed that Valdez had full range of motion in his neck and slightly decreased range of motion in his right shoulder. Dr. Chan continued Valdez on NSAIDs and instructed him on range of motion exercises for his neck and shoulder.

In addition to Valdez's deposition and the medical records, Dr. Chan has also submitted the affidavit of Dr. Chad Zawitz. Dr. Zawitz practices internal medicine and infectious diseases for the Cook County Jail System in Illinois. Dr. Zawitz has reviewed the pertinent medical records in the instant case. Based on his review of the medical records he is of the opinion that the initial assessment and care of Valdez was reasonable and appropriate. Dr. Zawitz finds nothing in the medical records indicating that Valdez injuries warranted anything more than conservative management and superficial wound care, noting there were no signs of concussion or neurologic deficits. Dr. Zawitz agrees with Dr. Chan's prescription of pain medication and x-rays. Based upon his review of the medical records and his experience Dr. Zawitz is of the opinion that Valdez sustained a most a minor scalp laceration that did not require stitches. The documentation supports a timely, reasonable and appropriate medical evaluation. Dr. Zawitz concludes that the care and management provided by Dr. Chan was timely, reasonable and appropriate.

Valdez has not filed an affidavit of any medical provider that would rebut the opinions expressed by Dr. Zawitz or otherwise contest Dr. Chan's version of the facts.

As discussed above, in order to establish a deliberate indifference claim Valdez must prove: (1) he had an objectively serious medical need that if left untreated could cause serious harm; (2) that Dr. Chan was aware of the risk of harm; and (3) that Dr. Chan ignored the risk by conduct that was more than mere negligence.

There is nothing within the uncontested facts which would support Valdez's claim that Dr. Chan was deliberately indifferent to a serious medical need. To the contrary, the uncontested evidence establishes that the health care services provided by Dr. Chan properly addressed Valdez's medical needs. The undisputed facts show Valdez did not present with a serious medical need. At worst Valdez had two small lacerations on his head and later experienced muscle spasms. Dr. Chan examined Valdez on three occasions. He provided medication and obtained x-rays. The x-rays showed no serious injury. Dr. Chan continued Valdez's medication and instructed him on range of motion exercises. This treatment was reviewed by an independent doctor who found the treatment to be reasonable and appropriate based on the medical records. Since Valdez cannot establish either a serious medical need or that Dr. Chan ignored his medical needs the motion for summary judgment should be granted.

## V. Conclusion

Based upon the undisputed facts, the undersigned finds the defendant has met his evidentiary burden to establish that the Plaintiff cannot prevail on his claim. The motion for summary

judgment filed by the defendant should, therefore, be granted in that the pleadings, together with the affidavits, deposition testimony and documentary exhibits, show that there is no genuine issue as to any material fact, and that the defendant is entitled to judgment as a matter of law on both the exhaustion issued and the deliberate indifference issue. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

## VI. Recommendations

Based upon the foregoing, it is recommended that Defendant Chan's Motion for Summary Judgment (DE# 40) be **GRANTED** and that she be dismissed, with prejudice, as a defendant, because based on the undisputed facts the Plaintiff has failed to establish either that he exhausted his administrative remedies or that there was a constitutional violation.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 31st day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE

cc:

Christopher Valdez
732140
Dade Correctional Institution
Inmate Mail/Parcels
19000 SW 377th Street
Florida City, FL 33034
PRO SE

Louis Reinstein

Kelley Kronenberg
8201 Peters Road
Suite 4000
Plantation, FL 33324

Gregory James Jolly
Purdy, Jolly, Giuffreda and Barranco, P.A.
2455 E. Sunrise Blvd. Ste. 1216
Ft. Lauderdale, FL 33304